UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
THE CATHEDRAL CHURCH OF
THE INTERCESSOR; THE MOST
REVEREND CRAIG W. BATES;
THE VERY REVEREND DAVID B.
KLAMPERT; REVEREND JOSEPH
CICCARELLO; and
EDWARD KORYCKA,

                                                                CV 02-2989
                                        Plaintiffs,             (TCP) (MO)


            - against -                                         **MEMORANDUM
                                                                AND
                                                                ORDER**

THE INCORPORATED VILLAGE
OF MALVERNE; THE BOARD OF
TRUSTEES OF THE VILLAGE OF
MALVERNE; THE ARCHITECTURAL
REVIEW BOARD OF THE VILLAGE
OF MALVERNE; THE ZONING
BOARD OF APPEALS OF THE
VILLAGE OF MALVERNE;
ROBERT L. SOLARINO, individually and
as Superintendent of the Building
Department of the Village of Malverne;
PAUL BARROCA, individually and as
interim Superintendent of the Building
Department of the Village of Malverne;
JAMES CALLAHAN, III, individually
and as Trustee and as a member of the
Architectural Review Board of the
Village of Malverne; and SIDNEY B.
BROWNE & SON, LLP, individually in its
corporate capacity and as the engineer of
the Village of Malverne,

                                        Defendants.
--------------------------------------------------------------X
PLATT, District Judge.

Before this Court are two motions: (i) Defendants Village of Malverne et al. ("Village Defendants") move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts One through Eight of the Second Amended Complaint for failure to state a claim upon which relief can be granted and to dismiss the complaint in its entirety against the individual defendants on account of qualified immunity; and (ii) Defendants Paul Barroca and Sidney B. Bowne & Son, LLP ("Bowne Defendants"), move pursuant to Federal Rules of Civil Procedure 12(c) and 12(h) to dismiss and for judgment on the pleadings. For the reasons stated in this opinion, the Defendants' motions to dismiss are DENIED.

## BACKGROUND

The Court assumes familiarity with (i) the underlying facts of this case alleging, inter alia, constitutional violations on account of religion, race, and national origin, and (ii) the previous decision of this Court regarding these matters. See Cathedral Church of the Intercessor v. Inc. Vill. of Malverne, 353 F. Supp. 2d 375 (E.D.N.Y. 2005).

The suit is brought by the Cathedral Church of the Intercessor (the "Church"); the Most Reverend Craig W. Bates, the Bishop and Senior Pastor of the Church ("Bishop Bates"); the Very Reverend David B. Klampert, the Dean and Associate Pastor of the Church ("Rev. Klampert"); Reverend Joseph

Ciccarello, the Pastor and Worship Leader at the Church ("Rev. Ciccarello"); and Edward Korycka, an active member of the Church ("Korycka"), (collectively "Plaintiffs").

The Defendants are: the Incorporated Village of Malverne ("the Village"); the Board of Trustees of the Village of Malverne ("the Board of Trustees"); the Architectural Review Board of the Village of Malverne ("ARB"); the Zoning Board of Appeals of the Village of Malverne ("ZBA"); Robert L. Solarino, Superintendent of the Village Building Department ("Solarino"); Paul Barroca, Interim Superintendent of the Village Building Department ("Barroca"); Joseph J. Hennessy, Trustee and member of the ARB ("Hennessy"); James J. Callahan, III, Trustee and member of the ARB ("Callahan"); Sidney B. Bowne & Son, LLP ("Bowne"), (collectively "Defendants").

By Memorandum and Order (the "Order") dated January 25, 2005, the Court dismissed Plaintiff's Amended Complaint, finding that the complaint did not present any constitutional issues and noting that the issues presented therein were more properly addressed to a New York State court in an Article 78 proceeding. The Court, however, permitted Plaintiffs an opportunity to re-plead consistent with their obligations under Rule 11 of the Federal Rules of Civil Procedure and within the parameters set forth in the Court's Order.

Before the Court on these motions is Plaintiffs' Second Amended

Complaint ("SAC").  The facts leading up to the filing of the instant lawsuit are adequately set forth in the Order and will not be repeated herein in great detail. The SAC employs the same general framework of the Plaintiffs' Amended Complaint but contains a plethora of factual allegations in support of the following ten (10) stated causes of action:[1]

1. Equal Protection violation: on account of religion
2. Equal Protection violation: arbitrary and selective enforcement
3. Substantive Due Process violation: arbitrary application of zoning and building laws
4. Procedural Due Process violation
5. First Amendment violation: retaliation for exercise of the First Amendment right to petition
6. Religious Land and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA") violation: on account of unequal terms
7. RLUIPA violation: on account of discrimination
8. RLUIPA violation: on account of unreasonable limitations
9. Malverne Code and Local Law 1-1975 are void
10. Local Law 1-1975 is unconstitutionally vague and overbroad.

In support of these claims, Plaintiffs have alleged in detail the races and national origins of the Church's members as well as the history of the Church's expansion.  (SAC ¶¶ 23-61).  Plaintiffs assert that in or around 1985 the Church's membership had declined dramatically to approximately fifty (50) members and that Bishop Bates was assigned to the Church.  (SAC ¶ 24).  Under

---

[1]In the SAC, Plaintiffs have dropped their cause of action for Interference with Plaintiffs' right to seek redress in court.

his leadership, the Church disaffiliated with the Episcopal Church and became affiliated in 1995 with the International Communion of the Charismatic Episcopal Church, which Plaintiffs allege to be a non-mainstream religion. (SAC ¶ 25). During this time period, the Church's membership expanded to include approximately four hundred (400) members in 1995 and continued to expand to approximately six hundred (600) members at the time the Church contemplated a structural expansion in late 1997. (SAC ¶¶ 29, 43-54). The Church's membership expanded to include many people from outside of the Village, mainly persons of color and non-native U.S. citizens, in stark contrast to the Village's population, which is alleged to be 92% white. (SAC ¶¶ 35-42, 56-61).

Plaintiffs allege extensively in the SAC that because of the Defendants' actions and/or inactions with respect to their building proposals, the Church's members have been constrained and limited in the free exercise of their religion, and the Church has incurred costs due to the Church's inability to expand its structure. (SAC ¶¶ 43-54). Plaintiffs allege, inter alia, that: Church members have been constrained in their ability to observe fundamentally important elements of the Church's Sunday services, and the Church is without space to suitably provide faith-based counseling or communal faith-based activities. (SAC ¶¶ 44-54). Moreover, the Church has had to rent space at a local elementary school for Sunday school and rent commercial space for faith-based

counseling.  (SAC ¶¶ 48, 51).

The SAC also describes the selective treatment of the Church compared with other churches and the synagogue in Malverne.  (SAC ¶ 55). Plaintiffs allege that the "predominant" churches and synagogue in the Village are also located in residential zones, yet none of these institutions have been treated in a like manner to Plaintiffs.  By way of illustration, Plaintiffs assert that these institutions, whose membership generally reflects the racial composition of the Village residents, have been unhampered by Defendants in their efforts to construct space for faith-based activities and have received traffic and planning concessions to accommodate their expansions.  (SAC ¶ 55).

With respect to Plaintiffs' building proposals, Plaintiffs affirmatively assert property interests in their 1998 proposal, their 1999 proposal, and in the right to be free from various "stop work" orders issued after the approval of their 1999 proposal.  (SAC ¶¶ 117, 134, 155-57).  Plaintiffs initially take issue with the representations by the Village's Building Inspector, Nagorski, that no variance would be needed to expand the Church's facilities.  (SAC ¶¶ 62-64).  Plaintiffs further state that Defendants did not abide by the procedures outlined in Malverne Local Law 1-1975 ("1-1975") for the approval of an application before the ARB, and that under those procedures, Plaintiffs' proposal could not be deemed to have been rejected.  (SAC ¶ 103).   Instead, the failure of

the ARB to take any action instead constituted an acceptance of the 1998 proposal as of the 33rd day after its referral, thereby depriving Plaintiffs of procedural due process (SAC ¶¶ 103(d), 155).  Plaintiffs further allege an equal protection violation based upon the Village's "denial" of a building permit to the church "whether in 1998 or 1999," although they exclude Barocca and Bowne from these claims.  (SAC ¶¶ 115-117).

With respect to Plaintiffs' allegations of a property interest, an important addition to the SAC is Plaintiffs' claim that, as an example of Defendants' continuing deliberate and intentional discriminatory course of conduct, Defendants' have "to this day have refused to issue to the Church a certificate of occupancy for its expanded structure, without regard to the fact that the Church has submitted to the Village Building Department all information necessary for issuance of the certificate of occupancy."  (SAC ¶134(y)).  The Village Defendants do not address this claim.  The Bowne Defendants state that they "were taken off this project specifically because of this lawsuit and issuance of the certificate of occupancy is inapplicable to the Bowne defendants."  (Bowne Mem. Mot. Dismiss at 13).  As will be discussed in greater detail below, common sense leads the Court to conclude that one would certainly have a property interest in the issuance of a certificate of occupancy and many courts have so held.  See, e.g., Sullivan v. Town of Salem, 805 F.2d 81, 84-85 (2d Cir. 1986);

<u>Acorn Ponds v. Inc. Vill. of North Hills,</u> 623 F. Supp. 688, 692 (E.D.N.Y. 1985);

<u>O'Mara v. Town of Wappinger</u>, 400 F. Supp. 2d 634, 645 (S.D.N.Y. 2005).

**<u>DISCUSSION</u>**

Defendants' motions seek to dismiss the SAC in its entirety as against Defendants Solarino, Hennessy, Callahan, and Barroca (collectively "Individual Defendants") on the ground of qualified immunity.  The motions also seek dismissal of Counts One through Eight as to the remaining Defendants for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

I.      Applicable Legal Standard

Rule 12(b)(6) permits both partial and complete dismissal for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss a complaint for failure to state a claim, the Court must assume as true all allegations contained in the complaint.  <u>Chance v. Armstrong</u>, 143 F.3d 698, 701 (2d Cir. 1998).  On Rule 12(b)(6) motions, the Court must assess only the legal feasibility of the complaint and whether Plaintiffs have pled claims on which they are entitled to discovery.  <u>Sims v. Artuz</u>, 230 F.3d 14, 20 (2d Cir. 2000); <u>Chance</u>, 143 F.3d at 701.  The Bowne Defendants' motion was brought pursuant to Rule 12(c), a motion for judgment on the pleadings.  The standards for motions brought pursuant to Rule 12(b)(6)

and 12(c) are analogous. <u>Burnette v. Carothers</u>, 192 F.3d 52, 56 (2d Cir. 1999).

II.      Claims 1 and 2: Equal Protection

Plaintiffs herein only challenge the selective enforcement of the governmental regulations, not the validity of the regulations themselves. Such a challenge is subject to a two-part test: (1) the Plaintiffs, compared with others similarly situated, must have been selectively treated; and (2) the selective treatment must have been motivated by an intention to discriminate on the basis of impermissible considerations, such as by race or religion, to punish or to inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure. <u>Zahra v. Town of Southold</u>, 48 F.3d 674, 683 (2d Cir. 1995); <u>Lisa's Party City, Inc. v. Town of Henrietta</u>, 185 F.3d 12 (2d Cir. 1999).

In the SAC, Plaintiffs have included a lengthy paragraph detailing the selective treatment of the Church compared with other churches and the synagogue in Malverne. (SAC ¶ 55). Accepting these allegations as true, which the Court must do at this stage, Plaintiffs have sufficiently alleged the first element of an equal protection claim.

With respect to the second element, Plaintiffs must allege that the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as by race or religion. From Plaintiffs'

allegations, the Court can only conclude that for pleading purposes, Plaintiffs have satisfied this element.  See Zahra, 48 F.3d at 683.  In support of these allegations, Plaintiffs refer the Court to the Defendants' actions and failures to act from 1998 to the present as compared with those actions taken or not taken with respect to the mainstream religious institutions in Malverne.  Plaintiffs allege, that unlike the Church's members, the races and national origins of the members of the mainstream religious institutions generally reflect the racial composition of the Village's population.  (SAC ¶ 55).  From this allegation, along with arguably racially-charged comments made at a public hearing reflecting community opposition and allegedly adopted by the ZBA, Plaintiffs sufficiently allege discriminatory animus on the part of Defendants.  Although the Court recognizes, as Defendants contend, that an allegation of differential treatment alone is insufficient to demonstrate malice, or discriminatory or bad faith intent, see LeClair v. Saunders, 627 F.2d 606, 610-11 (2d Cir. 1980), cert. denied, 450 U.S. 959 (1981), here the Court is presented with more than a simple allegation of differential treatment.  A more than rational inference to be drawn from the allegations, particularly those concerning the Church's membership, is that Defendants' behavior is wholly consistent with a discriminatory or bad faith intent.  As such, Plaintiffs' SAC sufficiently makes out the second element of an equal protection claim.

Moreover, Plaintiffs have also adequately alleged that there was no rational basis for the selective treatment, as required by the "class of one" status outlined in Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).   Where the plaintiff alleges that the plaintiff has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment, plaintiff states an equal protection claim.  Id.  Plaintiff has adduced sufficient facts from which a reasonable fact finder could conclude that the rational bases offered by the Defendants for the difference in treatment were "illegitimate pretexts intended to shield the defendants' discriminatory intent." (Pl.'s Opp. Mem. at 16).

Accordingly, Plaintiffs' equal protection claims pass constitutional muster, and Defendants' motions to dismiss these claims are denied.

III.     Claims 3 and 4: Due Process

A.     Property Interest

The threshold issue for analyzing either substantive or procedural due process claims is whether the Plaintiff was deprived of a property interest. Board of Regents v. Roth, 408 U.S. 564 (1972).  Plaintiffs assert that the Village Building Zone Ordinance, Village Code § 49-11 ("BZO"), is the only enforceable land use law, and that under the BZO, the Village Building Superintendent's

determination that a variance was not required meant that the church had an entitlement to a building permit in 1998. Alternatively, Plaintiffs assert that under the Architectural Review Board law, 1-1975, because the ZBA failed to take action with respect to its 1998 proposal, they were entitled to building permit issuance on the 33rd day following the referral of their proposal to the ARB. Plaintiffs also assert a property interest in their 1999 proposal and in the right to be free from various "stop work" orders after the eventual approval of the 1999 proposal. Although not explicitly stated, the Court recognizes that Plaintiffs have attempted to assert a property interest in the issuance of a certificate of occupancy.

The touchstone of a deprivation of a property interest claim in this Circuit rests on "a legitimate claim of entitlement" under applicable State law. Walz v. Town of Smithtown, 46 F.3d 162, 168 (2d Cir. 1995). Plaintiffs may meet their burden by demonstrating that "absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." Id. (quoting Yale Auto Parts v. Johnson, 758 F.2d 54, 59 (2d Cir. 1985)). The determinative factor in analyzing a claim of entitlement is whether the issuing authority has discretion in deciding to issue the requested permit. If the issuing authority has discretion in deciding whether to issue a permit or license, the federal courts will not sit as a "superceding body" to the

local administrative agency.  <u>Natale v. Town of Ridgefield</u>, 170 F.3d 258, 263 (2d Cir. 1999); <u>Zahra v. Town of Southold</u>, 48 F.3d 674, 680 (2d Cir. 1995). However, the courts have repeatedly recognized that when a landowner's constitutional rights are infringed by local zoning actions, they are duty-bound to protect the constitutional interest.  <u>See, e.g.,</u> <u>Village of Belle Terre v. Boraas</u>, 416 U.S. 1, 3 (1974); <u>Sullivan v. Town of Salem</u>, 805 F.2d 81, 82 (2d Cir. 1986).

The Court is still of the opinion that the applicable zoning laws vest the ARB and the ZBA with considerable discretion in the issuance of building permits.  The discretionary "may" language of Village Code 49-11 would appear to defeat Plaintiffs' due process claim with respect to the issuance of any building permit.  <u>See, e.g.,</u> <u>RRI Realty Corp. v. Inc. Vill. of Southampton</u>, 870 F.2d 911, 918-19 (2d Cir.), <u>cert. denied</u>, 493 U.S. 893 (1989) (refusing to recognize a property interest in a building permit because the town officials had discretion to either grant or deny the permit).  Nonetheless, Plaintiffs assert that under the BZO, Nagorski's initial determination that a variance was not necessary curtailed any discretion the Village may have had to deny Plaintiffs' 1998 or 1999 proposals, in part because the Church is located in a residential zone and the expansion was a permitted use.  (SAC ¶ 64).  Accepting these allegations as true, at a minimum, the Court finds that Plaintiffs have sufficiently alleged a property interest in the 1998 and 1999 proposals.

Plaintiffs have alleged no new facts that would lead the Court to reconsider the finding in its prior Order that the "stop work" orders at issue were not an unconstitutional deprivation of any property right.  See Order at 21-22.

In anticipation of a summary judgment motion and trial on these matters, the Court offers the following guidance concerning Plaintiffs' claim that Defendants have refused to issue a certificate of occupancy.  (SAC ¶ 134(y)).  In Sullivan v. Town of Salem, the Second Circuit held that if the properties at issue complied with the applicable State and municipal requirements, then under the applicable law, there was no element of discretion or judgment remaining for the building official to exercise in determining whether to issue the certificates of occupancy.  805 F.2d 81, 84-5 (2d Cir. 1988); see also Frooks v. Town of Cortlandt, 997 F. Supp. 438, 451 (S.D.N.Y. 1998) (holding that because Plaintiff had not alleged that he had complied with all regulatory requirements, Plaintiff lacked a cognizable property interest in a certificate of occupancy); Deepwells Estates v. Inc. Vill. of Head of the Harbor, 973 F. Supp. 338, 349-50 (E.D.N.Y. 1997) (same).  In appealing the District Court's granting of a motion to dismiss, Sullivan noted that defendants therein had not raised any question as to matters over which a building official may have had discretion, such as the quality of construction, compliance with the proposed building plan, or satisfaction of building code and zoning requirements.

Despite Defendants' failure to address the refusal to issue a certificate of occupancy or to raise questions concerning discretionary matters precedent to the issuance of a certificate of occupancy, Plaintiffs have neglected to plead facts from which the Court could find that they were deprived of a property interest with respect to a certificate of occupancy. Plaintiffs have not addressed the State or local laws applicable to the issuance of a certificate of occupancy, and to what extent, if any, those laws provide the issuing authority with discretion. Plaintiffs have also failed to allege that they have complied with all such state or local laws. See Frooks, 997 F. Supp. at 451. Without these allegations, the Court is unable to conclude that Plaintiffs have adequately pleaded an entitlement to a certificate of occupancy.

Nonetheless, because the Court has determined that Plaintiffs have adequately stated a property interest in their 1998 and 1999 proposals, the Court, need not decide whether Plaintiffs have demonstrated the deprivation of a property interest based upon their allegation that to date Defendants have refused to issue a certificate of occupancy.

B.      Claim 3: Substantive Due Process Violation

Having found that Plaintiffs have established the first element of a substantive due process claim, the Court must now address the second element, namely whether Defendants have acted in a shocking, abusive, capricious, or

arbitrary manner.  See Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 503

(2d Cir. 2001).  From the SAC's more detailed allegations that Village officials,

through various tactics, have stalled and delayed the Church expansion and to this

day have refused to issue a certificate of occupancy, the Court concludes that such

allegations are consistent with an improper motive on the part of Defendants.

Plaintiffs' allegations of the disparate treatment of the Church compared to the

other churches and the synagogue in the Village support a reasonable inference

that Defendants actions rise to the level of "shocking, abusive, capricious, or

arbitrary" behavior so as to make out a constitutional violation.

### C.    Claim 4: Procedural Due Process Violation

In order to state a procedural due process violation, Plaintiffs must

allege the deprivation of a right, privilege or immunity, secured by a law or the

Constitution of the United States, without sufficient procedure attending the

deprivation.  Ky. Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989).

As an initial matter the Court notes that absent from the complaint are allegations

that Plaintiffs sought post-deprivation remedies or that such remedies were

adequate.  Because Plaintiffs have alleged that the deprivations of property were

either established by or pursuant to Village policy (SAC ¶ 162), the existence of

adequate post-deprivation remedies will not bar a claim for violation of

procedural due process.  See Sullivan, 805 F.2d at 86.  Nonetheless, for the

reasons stated above with respect to Defendants' application of the BZO and 1-1975, the Court finds that Plaintiffs have adequately alleged insufficient procedures attending the asserted deprivations. Accordingly, Defendants motions to dismiss this claim are also denied.

IV.     Claim 5: First Amendment Retaliation

"To establish a retaliation claim under § 1983...[Plaintiff] must show: (1) his conduct was protected by the First Amendment; and (2) such conduct prompted or substantially caused defendant's actions." Dougherty v. Town of North Hempstead Bd. of Zoning, 282 F.3d 83, 91 (2d Cir. 2002). Defendants do not dispute that Plaintiffs plainly satisfy the first element of such a claim. Defendants do contend, however, that the allegations in the SAC do not support Plaintiffs' claim that the protected conduct substantially caused Defendants' actions.

Without the benefit of discovery, allegations concerning a defendant's retaliatory or discriminatory motive and intent are often difficult to plead. For that reason, the Second Circuit has held that, where sufficient facts are alleged, "retaliatory intent on the part of the defendants . . . reasonably may be inferred." Gagliardi v. Village of Pawling, 18 F.3d 188, 195 (2d Cir. 1994). In Gagliardi, for example, the court noted that plaintiffs had provided a detailed chronology of events from which an inference could be reasonably drawn that

defendants' actions were motivated by plaintiffs' exercise of protected rights. 18 F.3d at 195. Similarly, in <u>Dougherty</u>, the court held that plaintiff had alleged specific facts demonstrating a pattern of egregious treatment by defendants. 282 F.3d at 91-92.

Plaintiffs' SAC alleges in great detail both a chronology of events and a pattern of treatment by Defendants, which according to Plaintiffs' architect, is inconsistent with the industry practice and treatment he had received in the past when engaged in similar construction projects. <u>See</u> SAC Exhs. J, L. Moreover, Defendants' failure to address Plaintiffs' allegations concerning the certificate of occupancy underscores Plaintiffs' claim of improper motive. In light of these allegations, one could reasonably infer that Defendants' proffered reasons for their actions are pretextual. Thus, the Court finds that Plaintiffs have adequately pled the second element, and Defendants' motions to dismiss this claim are denied.

V.     Claims 6, 7, and 8: RLUIPA

In order to establish a prima facie violation of RLUIPA, a Plaintiff must present evidence that the land use regulation at issue as implemented: (1) imposes a substantial burden, (2) on the "religious exercise," (3) of a person, institution, or assembly. 42 U.S.C. § 2000cc(a)(1); <u>Murphy v. Zoning Comm'n of the Town of New Milford</u>, 148 F.Supp. 2d 173, 187 (D. Conn. 2001). If the

Plaintiff is successful in making that prima facie showing, the burden shifts to the government to demonstrate that the regulation furthers a compelling governmental interest and is the least restrictive means of furthering that compelling interest. 42 U.S.C. § 2000cc(a)(1)(A-B).

The Village Defendants argue that Plaintiffs' RLUIPA claims are inadequately pled in that they fail to allege a substantial burden on religious exercise. The Bowne Defendants join in that argument and further argue that the RLUIPA claims are inapplicable to them because they were never involved in the ZBA or ARB decisions. Plaintiffs counter that the Order incorrectly interpreted the "complete denial" language of the Second Circuit's decision in Westchester Day Sch. v. Vill. of Mamaroneck, 386 F.3d 183 (2d Cir. 2004). Plaintiffs argue that the denial of the precise proposal submitted in 1998, even with the option to make revisions, constituted a "substantial burden." Id. at 188, n.3.

The Court agrees with Plaintiffs and with U.S. District Judge William Conner that a complete denial of the Plaintiffs' proposal is not necessary for the Court to find that the government regulation has imposed a substantial burden on religious exercise. See Westchester Day Sch. v. Vill. of Mamaroneck, 379 F. Supp. 2d 550, 556-57 (S.D.N.Y. 2005). The Court's Order only recognized that the allegations in Plaintiffs' Amended Complaint concerning Defendants' actions, whether a complete denial or something less, did not

sufficiently allege a substantial burden.

The allegations contained in paragraphs 45 through 54 of the SAC, however, amply support Plaintiffs' claim of a substantial burden on the exercise of religion. Plaintiffs allege that, because of the limited space available to the Church's members, those members were constrained in their ability to observe or participate in fundamental elements of the Church's Sunday services, including for example, liturgical readings, presentation of the choir, delivery of the sermon or homily, and administration of communion. (SAC ¶ 45). In addition, the Church's child members were forced to attend Sunday school at a local elementary school, and the Church was compelled to rent space for that purpose. (SAC ¶ 48). Similarly, the Church was compelled due to the lack of space to conduct faith-based activities and counseling away from the Church itself. (SAC ¶ 51). As a result of the Church's expansion and its structural limitations, the Church was compelled to hold three Sunday morning services, which were substantially reduced in length and content, in order to accommodate the needs of all of its members. (SAC ¶ 54). These allegations are just a portion of those Plaintiffs offer in support of their claim of a substantial burden and certainly rise above the level of "mere inconvenience." See Westchester, 379 F. Supp. 2d at 557 (citing Werner v. McCotter, 49 F.3d 1476, 1480 (10th Cir. 1995)).

Plaintiffs also appear to allege a substantial burden based upon the

issuance of stop work orders and the refusal to issue a certificate of occupancy.

Plaintiffs, however, provide the Court with no information as to the "land use

regulation[s]" governing stop work orders or certificates of occupancy and the

authority of the Village to issue either of them.  Nevertheless, Defendants'

application of or inaction with respect to such regulations may provide the Court

with a basis to conclude that Plaintiffs have demonstrated a substantial burden on

Plaintiffs' religious exercise.

As Plaintiffs have properly alleged RLUIPA claims, Defendants

motions to dismiss these claims are denied.

VI.     Qualified Immunity

A defense of qualified immunity protects government officials

from civil liability arising from the performance of their discretionary functions

"insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  Harlow v.

Fitzgerald, 457 U.S. 800, 818 (1982); Giacalone v. Abrams, 850 F.2d 79, 85 (2d

Cir. 1988).  The defense is ordinarily asserted by answer.  McKenna v. Wright,

386 F.3d 432, 435 (2d Cir. 2004).  When a defendant attempts to establish

qualified immunity on a motion to dismiss, he must demonstrate that the facts

supporting the defense appear on the face of the complaint.  See Citibank, N.A. v.

K-H Corp., 968 F.2d 1489, 1494 (2d Cir. 1992).  Plaintiffs herein have not

alleged facts which would establish the defense of qualified immunity for the Individual Defendants.

Accordingly, the claim of qualified immunity is premature as to all counts of the Plaintiffs' SAC.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motions to dismiss are

DENIED.

SO ORDERED.

                                                    <u>  s/s Thomas C. Platt      </u>
                                                    Thomas C. Platt, U.S.D.J.

Dated: Central Islip, New York
        March 6, 2006